UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

FERRION, LLC, a Florida limited liability company,

Plaintiff,

vs. CASE NO.: 6:21-cv-2040-RBD-EJK

L.B. FOSTER COMPANY, a foreign corporation authorized to conduct business in the State of Florida,

Defendant.
_______________________________________/

**OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

Defendant L.B. Foster Company, a corporation licensed to do business in Florida, claims that this Court cannot exercise personal jurisdiction over it, and also contends that four of the counts of the complaint should be dismissed for failure to state a claim upon which relief can be granted. As set forth below, these points are without merit, and the motion to dismiss should be denied.

**FACTUAL BACKGROUND**

**A. The Allegations of the Complaint**

Plaintiff is a Florida Limited Liability Company in the business of brokerage of mill byproducts throughout the United States. Compl. at ¶ 4; Declaration of Dermot Cawley In Support of Plaintiff's Response in Opposition to Defendant's Motion to Dismiss, attached as Exhibit 1 ("Cawley Decl.") ¶ 2. The instant action concerns two

contracts between Plaintiff and Defendant. The first contract is represented by Purchase Order 4500026440 ("First Purchase Order") dated April 29, 2021, and the second by Purchase Order 4500027077 ("Second Purchase Order") dated May 21, 2021 (together, "Purchase Orders"). Compl. at ¶ 5-6. Plaintiff initiated this action because Defendant has failed to pay the amounts due to Plaintiff under the Purchase Orders. Compl. at ¶ 5-8. The current amount due to Plaintiff by Defendant is $48,970.00 (without interest) under the First Purchase Order and the current amount due to Plaintiff by Defendant is $421,135.61 (without interest) under the Second Purchase Order. Compl. at ¶ 5-6. Based on Defendant's failure to pay, Plaintiff has brought claims for breach of contract, unjust enrichment, account stated, open account, and goods sold.

**B. Contacts between Plaintiff and Defendant**

Contact between Plaintiff and Defendant with regard to the Purchase Orders began in 2019, when Defendant's then-Director of Rail Sales, Joe Mahoney ("Mahoney"), started communications regarding the sales with Plaintiff's founder, co-owner, and sole manager, Dermot Cawley. Cawley Decl. ¶ 2-3. Cawley resides in Orlando, Florida and his residence is the principal address of Plaintiff. Cawley Decl. ¶ 2. All the essential terms of the contracts for the Purchase Orders were negotiated between Mahoney and Cawley. Cawley Decl. ¶ 11. Communications between Mahoney and Cawley regarding the Purchase Orders occurred via telephone, and Cawley was present in Florida throughout the majority of these communications.

Mahoney was fully aware that Cawley was located in Florida throughout the communications between them regarding the Purchase Orders. Cawley Decl. ¶ 8-10.

In or around July of 2021, Defendant's representative Craig Davis assumed Mahoney's role in the completion of the open Purchase Orders. However, this occurred only after Cawley and Mahoney had negotiated all the essential terms of the contracts for the Purchase Orders. Cawley Decl. ¶ 12. Like Mahoney, Davis was aware that Cawley and Plaintiff were based in Florida. Cawley Decl. ¶ 12. Although Stephanie Rosenthal, who is an independent contractor for Plaintiff and located in Georgia, assisted Plaintiff with the completion of the open Purchase Orders, her involvement started only after Cawley had negotiated all the essential terms of the contracts from Florida. Cawley Decl. ¶ 13.

Under the Purchase Orders, the payments were to be made, and in fact were partially made, to Plaintiff's Florida-based bank, Cogent Bank, and not Georgia-based Pinnacle Bank (as asserted in Defendant's Motion). Cawley Decl. ¶ 15. Cogent Bank is based in Florida and only has Florida locations Cawley Decl. ¶ 15. On March 27, 2020, Defendant requested that Plaintiff send Plaintiff's Automated Clearing House ("ACH") information for purposes of making payments due under the Purchase Orders—in response Plaintiff sent ACH account information, which clearly displayed on its face Plaintiff's Orlando, Florida address and Cogent Bank's Orange City, Florida address. Cawley Decl. ¶ 16. To date, Defendant has remitted a total of six *partial* payments for the Purchase Orders into Plaintiff's account with Cogent Bank.

Cawley Decl. ¶ 15.

## ARGUMENT

## I. THIS COURT HAS PERSONAL JURISDICTION OVER DEFENDANT

District courts in the Eleventh Circuit consider two questions when determining whether they have personal jurisdiction over a non-resident defendant—first, whether the exercise of personal jurisdiction is appropriate under the forum state's long-arm statute, and second, whether personal jurisdiction over the defendant would violate the Due Process clause of the Fourteenth Amendment of the U.S. Constitution. *Melgarejo v. Pycsa Panama, S.A.*, 537 F. App'x 852, 858-859 (11th Cir. 2013); *Hinkle v. Cont'l Motors, Inc.*, 268 F. Supp. 3d 1312, 1319 (M.D. Fla. 2017), *aff'd,* 775 F. App'x 545 (11th Cir. 2019). The facts alleged in a plaintiff's complaint must be accepted as true, unless the defendant can refute the allegations through competent evidence. *Hinkle,* 268 F. Supp. 3d at 1318. If the plaintiff then offers its own further evidence to substantiate its jurisdictional allegations, then courts must construe all reasonable inferences in the light most favorable to the plaintiff. *Id* at 1318-1319. Personal jurisdiction can either be specific or general. *Melgarejo,* 537 F. App'x at 854.

### A. The Court Has Specific Personal Jurisdiction Under the Long-Arm Statute

Specific jurisdiction, which is at issue here, exists when the cause of action "arises from" a defendant's specific activity in Florida as enumerated by the Florida long-arm statute, including but not limited to engaging in business in Florida or breaching a contract that was to be performed in part in Florida. Fla. Stat. §

48.193(1)(a); *see Consol. Mgmt. Sols., Inc. v. Dennis*, 2008 WL 2694107 at *3 (M.D. Fla. July 7, 2008). Here, this Court can exercise specific personal jurisdiction over Defendant under the long-arm statute because Defendant breached a contract in Florida and this cause of arises out of Defendant's business activities in Florida.

**1. <u>Defendant Breached the Contract by Failing to Make Payments in Florida</u>**

Under the Florida long-arm statute, a non-resident Defendant submits itself to the jurisdiction of Florida courts for any cause of action which arises from its "breaching of a contract in [Florida] by failing to perform acts required by the contract to be performed in [Florida]." Fla. Stat. § 48.193(1)(a)(7.). Plaintiff and Defendant entered into agreements to purchase goods, which were then memorialized in the Purchase Orders. As a term of those agreements, payment for the Purchase Orders was to be made in Florida. Although on their face, the Purchase Orders do not state anything about where payment was to be made, this essential term was established through Plaintiff's communications with Defendant. Cawley Decl. ¶ 15-16. Moreover, the course of performance between Plaintiff and Defendant, which demonstrates that Defendant made partial payments to Plaintiff in Florida, establishes that payment for the contracts was to be made in Florida. Cawley Decl. ¶ 15; Fla. Stat. Ann. § 671.205 (defining "course of performance" and its function in contract interpretation); *W. Town Plaza Assocs., Ltd. v. Citi Trends, Inc.*, 2018 WL 8619995 at *4 (S.D. Fla. Sept. 12, 2018) (for purposes of long-arm statute, court considered parties' course of

performance where defendant had made several payments in Florida to plaintiff); *see also Am. Univ. of the Caribbean, N.V. v. Caritas Healthcare, Inc.*, 484 F. App'x 322 at *3 (11th Cir. 2012) (when a contract does not state where payment is due, it is presumptively due at the creditor's place of business, which is sufficient to satisfy the Florida long-arm statute).

Defendant's assertion in its motion to dismiss that no partial payments were remitted to any Florida bank account owned by Plaintiff is incorrect, and Defendant misidentified the bank to which the partial payments were made. Doc. 7, Motion at 8-9. In reality, not only were partial payments made by Defendant on the Purchase Orders, but they went directly into Plaintiff's bank account with Florida-based Cogent Bank. This is evidenced by Plaintiff's bank statements from Cogent Bank which reflect the partial payments as well as Plaintiff's Automated Clearing House account information from Cogent Bank sent to Defendant. Cawley Decl. ¶ 15-16. Cogent Bank's official website states in its "About Me" section: "Our team of bankers consists of over 70 financial professionals located in Central, Northeast and West Florida." Cawley Decl. ¶ 15. Furthermore, Cogent Bank only has locations in Florida. Cawley Decl. ¶ 15.

Therefore, an essential part of the contract performance between Plaintiff and Defendant necessarily occurred in Florida as Plaintiff, a Florida-based company, received partial payments into its Florida-based bank account—which was the bank account that Plaintiff had originally and to which it always instructed Defendant to

remit payments. *Smith Architectural Grp., Inc. v. Dehaan*, 867 So. 2d 434, 436 (Fla. 4th DCA 2004) ("It is sufficient for purposes of the first prong of the test that the contract between the parties in this case was made with a Florida resident and payment was to be made in this state."); *Cornerstone Inv. Funding, LLC v. Painted Post Grp., Inc.,* 188 So. 3d 904, 905 (Fla. 4th DCA 2016); *Buzz Pop Cocktails Corp. v. Booze Pops, LLC*, 2020 WL 2838825 at *5 (M.D. Fla. Apr. 22, 2020); *Aspsoft, Inc. v. WebClay,* 983 So. 2d 761, 766 (Fla. 5th DCA 2008) ("It is sufficient…that a complaint allege that a contract was made by a resident plaintiff with a non-resident defendant and that payment was agreed to have been made in Florida.").

**2. <u>This Action Arises Out of Defendant's Business Activities in Florida</u>**

Furthermore, Defendant focuses only on the provision in the Florida long-arm statute that concerns a breach of contract when a defendant fails to perform acts required to take place in Florida. *See* Fla. Stat. Ann. § 48.193(1)(a)(7). But that provision is not the only basis for specific jurisdiction here. Specific jurisdiction also exists where a defendant operates, conducts, engages in, and/or carries on a business, or maintains an office, in Florida. Fla. Stat. Ann. § 48.193(1)(a)(1). The Eleventh Circuit has stated that some of the non-dispositive factors to consider in determining whether a nonresident defendant has "conducted business" in Florida for purposes of the long-arm statute include: presence and operation of an office in Florida, the possession and maintenance of a license to do business in Florida, the number of Florida clients served, and the percentage of overall revenue received from Florida

clients. *Horizon Aggressive Growth, L.P. v. Rothstein-Kass, P.A.,* 421 F.3d 1162, 1167 (11th Cir. 2005); *Hastings v. Inmate Servs. Corp.*, No. 2:17-CV-145-FTM-99CM, 2017 WL 5138272 at *3 (M.D. Fla. Nov. 6, 2017). Furthermore, such factors "must be considered collectively and show a general course of business activity in the state for pecuniary benefit." *Id* at *3 (quoting *Horizon Aggressive Growth).*

Here, Defendant operates at least one office in Florida. Defendant maintains a business license in Florida also. And Defendant has conducted business in Florida amounting to tens of millions of dollars in revenue emanating from its business presence in Florida [1]. Moreover, in this case, the negotiations preceding the Purchase Orders occurred through Defendant's contact with Plaintiff's co-owner, sole manager, and Florida resident, Dermot Cawley, who was at all relevant times in Florida during these negotiations. Cawley Decl. ¶ 6. Cawley initially negotiated via several telephone calls with Joe Mahoney, Director of Rail Sales, who was at all times aware that Plaintiff was a Florida company and that Cawley was located in and communicating from Florida. Cawley Decl. ¶ 3, 7-10. Indeed, Mahoney even stated to Cawley that he wanted to meet with Cawley in Orlando the next time Mahoney was visiting the Orlando office of Defendant (thus showing his intent to use Defendant's Florida office for this transaction). Cawley Decl. ¶ 10. Eventually Mahoney left employment with Defendant and was replaced by Craig Davis. Davis was likewise aware of all the above

---

1 Copies of these publicly available documents are attached as Exhibit 2.

facts about Plaintiff and Cawley. Cawley Decl. ¶ 12; *See Baker Elecs., Inc. v. Pentar Sys., Inc.,* 219 F. Supp. 2d 1260, 1263-1264 (M.D. Fla. 2002) (court focusing on, *inter alia*, the exchange of business communications between nonresident defendant and plaintiff located in Florida for purposes of § 48.193(1)(a)(1.)); *Intego Software, LLC v. Concept Dev., Inc.,* 198 So. 3d 887, 893-894 (Fla. 1st DCA 2016) (discussing relevance of communications with plaintiff located in Florida during business relationship for purposes of § 48.193(1)(a)(1.)).

Defendant tries to avoid the impact of these circumstances by omitting any reference to Cawley, and instead focusing on Plaintiff's independent contractor, Stephanie Rosenthal. Cawley Decl. ¶ 3, 6-12. While Rosenthal facilitated some of the contact between the Parties, this was only *after* Cawley had already negotiated the initial and essential details of the Purchase Orders with Defendant. Cawley continued to be copied on emails between Rosenthal and Defendant, and when it became clear that Defendant was not paying what it owed Plaintiff, Cawley intervened to speak directly with Davis regarding the outstanding balance. Cawley Decl. ¶ 17. Tellingly, Defendant acknowledged Cawley's existence in its Response to Order to Show Cause and Amendment to Its Notice of Removal, when it acknowledged Cawley as Plaintiff's member and Cawley's Orlando, Florida address as Plaintiff's principal place of business. Doc. 11 at ¶ 17.

**B. <u>Personal Jurisdiction Over Defendant Does Not Violate Due Process</u>**

Once a court finds that the long-arm statute is satisfied, it must next consider

whether subjecting the defendant to personal jurisdiction will violate the Due Process clause of the Fourteenth Amendment of the U.S. Constitution. *Melgarejo v. Pycsa Panama, S.A.*, 537 F. App'x 852, 858-859 (11th Cir. 2013). The Due Process clause requires that the nonresident defendant have "minimum contacts with the forum state and that the exercise of jurisdiction of the defendant does not offend traditional notions of fair play and substantial justice." *Id.* at 859.

The Eleventh Circuit has adopted a three-part test when determining whether the exercise of specific jurisdiction over a defendant would violate Due Process: **First**, courts consider whether the plaintiff's claims "arise out of or relate to" at least one of the defendant's contacts with the forum; **second**, courts consider whether the plaintiff has demonstrated that the defendant "purposefully availed" itself of the privilege of conducting activities in the forum state; and **third**, courts consider whether the defendant has made a "compelling case that the exercise of jurisdiction would violate traditional notions of fair play and substantial justice." *Waite v. All Acquisition Corp.*, 901 F.3d 1307, 1313 (11th Cir. 2018); *Amtrust N. Am., on behalf of Douglas Wainwright v. Sennebogen Maschinenfabrik Gmbh, dba Sennebogen, LLC*, 2020 WL 5441407 at *14 (M.D. Fla. Aug. 25, 2020), *report and recommendation adopted,* 2020 WL 5423203 (M.D. Fla. Sept. 10, 2020).

As to the first point, courts consider the "affiliation between the forum and the underlying controversy, focusing on any activity or occurrence that took place in the forum state." *Amtrust,* 2020 WL 5441407 at *14 (quoting *Waite*). Here, several facts

establish that the controversy between the parties arose from activities within Florida, as discussed above. First, Defendant solicited Plaintiff's business knowing that Plaintiff was a Florida-based company and that Cawley was based in Florida. Cawley Decl. ¶ 3, 6-12. Second, the initial negotiations between Plaintiff and Defendant occurred through Defendant's contact with Cawley, who was in Florida. Cawley Decl. ¶ 2-3, 6-12; *Bonczyk v. Levene*, 2020 WL 5803174 (M.D. Fla. Aug. 25, 2020) (finding that "relatedness prong" was satisfied because of "emails that [defendant] sent into Florida…"). Third, an essential part of the performance of the contract—payment—was to be performed in Florida and was at least partially performed in Florida. Cawley Decl. ¶ 15-16.

Turning to the second part, "purposeful availment", courts adopt the "minimum contacts" analysis for claims involving contracts. *Bonczyk v. Levene*, 2020 WL 5803174 at *11 (M.D. Fla. Aug. 25, 2020); *See also Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339 (11th Cir. 2013). This analysis asks whether the defendant's contacts with the forum state: (1) are related to the plaintiff's cause of action; (2) involve some act through which the defendant purposefully availed itself of the privileges of doing business with the forum state; and (3) are such that the defendant should reasonably anticipate being haled into court in the forum. *Bonczyk,* WL 5803174 at *11. Moreover, courts can consider *all* contacts between a nonresident defendant and the forum state. *Id* at *11 ("In performing this analysis, we identify all contacts between a nonresident defendant and a forum state and ask whether,

individually or collectively, those contacts satisfy these criteria.") (quoting *Louis Vuitton*).

Defendant's specific contacts regarding the instant controversy, as discussed above, make clear that this cause of action is related to Defendant's contacts with Florida—principally, when Defendant originally solicited business from Plaintiff, a Florida based company, and sent several communications into Florida, specifically directed to Cawley. Cawley Decl. ¶ 3, 7, 8-10, 12; *Diamond Crystal Brands, Inc. v. Food Movers Intern., Inc.*, 593 F.3d 1249, 1268 (11th Cir. 2010) ("when inspecting a contractual relationship for minimum contacts, we follow a "highly realistic approach" that focuses on the substance of the transaction: *prior negotiations*, contemplated future consequences, the terms of the contract, and *the actual course of dealing*.") [emphasis added]. Also, this cause of action arises from Defendant's failure to make full payments for the Purchase Orders into Plaintiff's Florida bank account. Cawley Decl. ¶ 15. *Diamond Crystal Brands,* 593 F.3d at 1269 ("The terms of the contracts and the *course of performance* reveal that the transactions involved contact with Georgia. A contract calling *for payment* and delivery in a forum requires "contact" with the forum.") [emphasis added and citation omitted].

As to the second and third considerations of the "minimum contacts" analysis, it is beyond dispute that Defendant purposefully availed itself of the privilege of doing business in Florida and that its contacts with Florida are so substantial that it should reasonably anticipate being haled into a Florida court in circumstances such as these.

Indeed, Defendant registered with Florida to do business in the state, maintains at least one office and multiple employees in Florida for purposes of doing business in Florida, and has historically, and recently, engaged in large, multi-million-dollar business projects in Florida. Ex. 2. Therefore, Defendant has purposefully availed itself of the privilege of doing business in Florida and that it should not be able to escape the accompanying responsibilities and expectations.

Finally, as to the last part of the Due Process test— whether Defendant has made a "compelling case that the exercise of jurisdiction would violate traditional notions of fair play and substantial justice"—it is Defendant's burden to make such a showing. *Louis Vuitton*, 736 F.3d at 1355 (11th Cir. 2013) ("The plaintiff bears the burden of establishing the first two prongs, and if the plaintiff does so, 'a defendant must make a 'compelling case' that the exercise of jurisdiction would violate traditional notions of fair play and substantial justice.'"); *CJS Sols. Grp., LLC v. Tokarz*, 2021 WL 848159 at *13 (M.D. Fla. Mar. 5, 2021) (quoting *Louis Vuitton*). Courts only apply the fair play and substantial justice factor sparingly. *See KMG Int'l, BV v. Fun Light Amusements, SRO*, 2019 WL 3343662 at *6 (M.D. Fla. July 25, 2019). In light of the circumstances described above, Defendant has not, and cannot, make this showing.

## II. <u>VENUE IS PROPER IN THIS DISTRICT</u>

Venue is proper in this district because a "substantial part of the events or

omissions giving rise to the claim occurred, or a substantial part of the property that is the subject of the action is situated" in Florida. 28 U.S.C. § 1391(b)(2). As discussed above, the Purchase Orders at the center of this controversy were negotiated between Plaintiff, a Florida based company, through Cawley, a Florida resident, and Defendant. The negotiations involved multiple instances of Defendant sending communications to Plaintiff in Florida. Also, a substantial part of the property that is at issue, the incomplete payment to Plaintiff by Defendant and Plaintiff's bank account, are located in Florida. Furthermore, for purposes of venue, venue is also proper where a defendant "resides," and Defendant "resides" in Florida because this Court has personal jurisdiction over Defendant. *See* 28 U.S.C. § 1391(b)(1); 28 U.S.C. § 1391(c)(2); 28 U.S.C. § 1391(d).

## III. COUNTS V, VI, VII AND VIII PROPERLY STATE CLAIMS UPON WHICH RELIEF CAN BE GRANTED.

In Section III of the Motion to Dismiss, Defendant asserts that Counts V, VI, VII and VIII of the Complaint should be dismissed pursuant to Rule 12(b)(6), Fed. R. Civ. P., for failing to state claims upon which relief can be granted. For purposes of analyzing a motion to dismiss based upon failure to state a claim, the factual allegations of the complaint must be taken as true and dismissal is only appropriate where it is clear the plaintiff can prove no set of facts in support of the claims of the complaint. *See Marshall County Board of Education v. Marshall County Gas District*,

992 F.2d 1171, 1174 (11th Cir. 1993).

**A. Counts V and VI Properly State a Claim for Account Stated.**

To establish a claim for account stated, a plaintiff must establish an explicit or implicit agreement between the parties, who have engaged in previous transactions, fixing the amount due in respect of such transactions and promising payment. *See Burt v. Hudson & Keyse, LLC*, 138 So.3d 1193, 1196-1197 (Fla. 5th DCA 2014). A form complaint for "account stated" is set forth as Fla. R. Civ. P., Form 1.933 (attached hereto as Exhibit 3).

As to both Counts V and VI, Plaintiff utilized Form 1.933 in alleging that before the institution of the action, Plaintiff and Defendant had business transactions, that on a date certain they agreed to a resulting balance (as evidenced by an attached email), that Plaintiff rendered the First and Second Purchase Orders to Defendant (which were attached to the Complaint) and that by virtue of prior transactions there was a fixed amount due per the First and Second Purchase Order and a promise of payment by Defendant.

Accordingly, Plaintiff has met the requirements of Form 1.933 for account stated with respect to both counts. A claim for account stated which meets the requirements of Form 1.933 sufficiently states a claim and should not be dismissed. *See Sierra Moveis, Ltda., v. Sierra USA Corp.*, 2017 WL 7792706 (S.D. Fla. Jan. 10, 2017) at *4 (plaintiff is required only to allege the elements set forth in Florida Rule of Civil Procedure Form 1.933 in order to state a claim for account stated).

Defendant argues that Counts V and VI for account stated are deficient for failure to state a claim since there is no allegation of discussion between Plaintiff and Defendant as to the particular amounts owed pursuant to the invoices. Motion at 13. However, in order for an account stated claim to be established:

> The agreement does not to be explicit. When a debtor has been issued an account statement and the debtor fails to object in a reasonable time, it is presumed that the account is correct and that the debtor is liable.

*Burt v. Hudson & Keyse, LLC,* 138 So.3d at 1196-97.*See also Sierra Moveis, Ltda. v. Sierra USA Corp.*, 2017 WL 7792706, at *4 (plaintiff is not required to allege a fixed amount due in a claim for open account). Here, Defendant was presented with the First Purchase Order (with respect to Count V) and the Second Purchase Order (with respect to Count VI). For purposes of stating a claim for account stated, it is sufficient to rely on the First Purchase Order and the Second Purchase Order to establish the element of resulting balance. *See Conseal International Incorporated v. Neogen Corporation*, 2020 WL 4736203 (S.D. Fla. Aug.14, 2020) at *7 (holding that providing debtor with an invoice of an amount owed in connection with ongoing transactions was sufficient to raise a viable claim for account stated).

Defendant's citation of *Carpenter Contractors of America, Inc. v. Fastener Corp. of America, Inc.*, 611 So.2d 564, 565 (Fla. 4th DCA 1992) for the proposition that "there must be an agreement between the parties that a certain balance is correct" is misplaced. In contrast to the situation here, in *Carpenter Contractors* there was no

invoice or account balance to establish the element of resulting balance. *Id.* Rather than an account balance or invoice between the parties, the issue in *Carpenter Contractors* involved an inventory list of tools loaned by one party to another. *Id.*

Finally, Defendant argues with respect to Count V that the email communication between Plaintiff and Defendant, as referenced in paragraph 29 of the Complaint, listed only the Second Purchase Order and did not list the First Purchase Order, which forms the basis the claim of account stated for Count V. Motion at 13-14. But whether the email message incorporates the First Purchase Order is irrelevant to whether a claim for account stated is properly plead, since it is the reference to the First Purchase Order in paragraph 30 of Count V that establishes the element of resulting balance. *See* Form 1.933, Fla. R. Civ. P.; *See also Conseal International Incorporated v. Neogen Corporation*, 2020 WL 4736203 (S.D. Fla. Aug. 14, 2020) at *7 (holding that the invoice at issue established a debtor/creditor relationship between the parties and raised a claim for account stated); *Plum Creek Technology, LLC v. Next Cloud, LLC*, 2020 WL 3052331 (M.D. Fla. Feb. 5, 2020) (holding plaintiff was entitled to default judgment on its account stated claim based upon pleading it had sent invoices to defendant for a sum certain which were unpaid).

Therefore, pursuant to Form 1.933, Account Stated, Fla. R. Civ. P., Plaintiff has properly stated its claims for account stated in Counts V and VI of the Complaint and Defendant's Motion to Dismiss Counts V and VI based upon failure to state a claim should be denied.

**B. <u>Counts VII and VIII Properly State a Claim for Open Account</u>.**

To establish a claim for open account, a plaintiff must establish an unsettled account and attach to the complaint an itemized statement reflecting unpaid invoices. *See Contractors Unlimited, Inc. v. Nortrax Equipment Company Southeast*, 833 So. 2d 286, 287-288 (Fla. 5th DCA 2002). A form complaint for "open account" is set forth in Fla. R. Civ. P. Form 1.932 (attached hereto for reference as Exhibit 4). As to Counts VII and VIII, Plaintiff utilized Form 1.932 in alleging that Defendant owes Plaintiff a particular amount with regard to the First and Second Purchase Order, which First and Second Purchase Orders were attached to the Complaint.

Therefore, Plaintiff has met the requirements of Form 1.932 for open account with respect to both Count VII and Count VIII. A claim for open account which meets the requirements of Form 1.932 sufficiently states a claim and should not be dismissed. *See Law Offices of David J. Stern, P.A. v. Bank of America Corp.*, 2012 WL 112935 (S.D. Fla. Jan. 12, 2012) at *4 (denying motion to dismiss a claim for open account upon plaintiff meeting the requirements of pleading such claim per use of Form 1.932).

Defendant argues that Plaintiff must have plead an existing and ongoing relationship between Plaintiff and Defendant and the expectation of future transactions. Motion at 14. First, Form 1.932, as outlined above, does not include an element of "expectation of future transactions" as a pleading requirement. Next, the case cited by the Defendant for this proposition, *Robert W. Gottfried, Inc. v. Cole*, 454 So.2d 695 (Fla. 4th DCA 1984), held that there was substantial evidence of an

open account in that case based upon their being a debt subject to future settlement and thus denied a motion to dismiss for that claim. *Id.* at 697. In Plaintiff's Complaint, the element of unsettled account is established by Plaintiff's reference to the First Purchase Order in paragraph 35 as to Count VII and to the Second Purchase Order in paragraph 37 with respect to Count VIII.

Finally, Defendant argues that the open account claims are are subject to dismissal because Plaintiff alleged the existence of an express contract between parties. Motion at 14-15. However, it is well-established that litigants in federal court may pursue alternative theories of recovery regardless of their consistency. Fed. R. Civ. P. 8(d)(2); *See also Conseal International Incorporated v. Neogen Corporation*, 2020 WL 4736203, at *6 (stating that plaintiff may rightfully plead an open account claim in the alternative to a breach of contract claim and that the open account claim is not subject to dismissal on that ground).

Therefore, pursuant to Form 1.932, Open Account, Fla. R. Civ. P., Plaintiff has properly stated its claims for open account in Counts VII and VIII of the Complaint and Defendant's Motion to Dismiss Counts VII and VIII based upon failure to state a claim should be denied.

## CONCLUSION

For the foregoing reasons, Defendant's Motion to dismiss should be denied.

Respectfully Submitted,

*/s/ Mary Ruth Houston* | */s/ John H. Bill*

MARY RUTH HOUSTON, ESQ.
Florida Bar No. 834440
Primary Email: mhouston@shutts.com
REED SEBASTIAN ARROYO, ESQ.
Florida Bar No. 1013893
Primary email: sarroyo@shutts.com
**SHUTTS & BOWEN LLP**
300 S. Orange Avenue, Suite 1600
Orlando, Florida 32801
Telephone: (407) 423-3200
Facsimile: (407) 425-8316
*Attorneys for Plaintiff*

JOHN H. BILL, ESQ.
Florida Bar No. 443890
Primary Email: jbill@gdb-law.com
**GODBOLD, DOWNING,**
**BILL & RENTZ, P.A.**
222 W. Comstock Ave., Suite 101
Winter Park, Florida 32789
Telephone: (407) 647-4418
Facsimile: (407) 647-2089
*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 18th day of January, 2022, a true and correct copy of the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system, which will automatically send notification of such filing to the following:

Christopher R.J. Pace, Esq.
Florida Bar No.: 721166
Email: crjpace@jonesday.com
Andrew J. Turnier, Esq.
Florida Bar No.: 1004235
Email: aturnier@jonesday.com
JONES DAY
600 Brickell Avenue, Suite 3300
Miami, FL 33131
Telephone: (305) 714-9700
*Attorneys for Defendant*

*/s/ Mary Ruth Houston*
Counsel of Record

ORLDOCS 19321507 2